UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RONNIE LEE HICKS, II,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JOHNSON, et al.,<br><br>　　　　　Defendants. | CASE NO. 2:22-cv-00421-RSM-BAT<br><br>**REPORT AND RECOMMENDATION** |

    Plaintiff Ronnie Lee Hicks, II, proceeds pro se in this civil rights action under 42 U.S.C. § 1983. At the time he filed his complaint, plaintiff was incarcerated at the Monroe Correctional Complex; he was later released to community custody. Dkt. 4, 11. Plaintiff's complaint names as defendants Deputy Johnson (Badge #368), Deputy Jorgenson (Badge #433), Deputy McEathron (Badge #456), Deputy Saechao, and John Doe, all employees of the Pierce County Sheriff's Department. Dkt. 6, attach. 1 ("Compl.") at 1-2. He alleges defendants violated his rights when they used unnecessary, excessive, and deadly force on plaintiff and/or failed to intervene when plaintiff was simply "seated on the ground." Compl. at 1.

    Before the Court is defendants' motion for summary judgment, seeking dismissal of all claims against them. Dkt. 18. Although plaintiff moved for, and the Court granted, two extensions of time to respond to defendants' motion, plaintiff has not responded to the motion.

REPORT AND RECOMMENDATION - 1

The Court has reviewed defendants' motion and the record and recommends that defendants' motion for summary judgment be GRANTED, and the case be DISMISSED with prejudice.

## BACKGROUND

### 1. *Plaintiff's complaint*

Plaintiff's complaint alleges the following facts:

While plaintiff was attempting to use a drive-through ATM on foot, defendant Johnson approached him and asked him what he was doing and if he had any ID. Compl. at 2. Plaintiff is 5'6" tall and weighed 160 pounds; Johnson appeared to be about 6'3" tall and weigh at least 230 pounds. *Id.* Plaintiff responded that he did not have ID, and Johnson ordered him to put his hands behind his back; plaintiff complied. *Id.* at 2-3. Johnson walked behind plaintiff and grabbed his hands. *Id.* at 3. Plaintiff pulled away, dropped to the ground, and said to get more officers there. *Id.* Johnson climbed on top of plaintiff and plaintiff began yelling for help. *Id.* Johnson interlaced his fingers with plaintiff's and tried to twist plaintiff's hands and arms. *Id.* Johnson got off plaintiff and pulled out what appeared to plaintiff to be a silver gun and said, "Do you want to get tased?" *Id.* Plaintiff responded, "That's not a taser, that's a gun!" and continued yelling for help. *Id.* Johnson radioed for backup, falsely stating he was fighting with plaintiff. *Id.* at 3-4. Plaintiff stayed seated on the ground waiting for more officers to arrive. *Id.* at 4.

When defendants Jorgenson, McEathron, Saechao, and Doe arrived, they ran up to plaintiff from behind and immediately began punching and hitting his head. *Id.* All defendants punched, struck, hit, kneed, and elbowed plaintiff while plaintiff yelled for help and for them to stop. *Id.* One defendant hit plaintiff's chin, forcing his mouth shut and shattering three of his teeth; that defendant held plaintiff's mouth shut so he could not scream any more while the other defendants continued to beat him. *Id.* Defendants rolled plaintiff onto his stomach and continued

to beat him and put a spit mask on him. *Id.* All defendants got on top of plaintiff, immobilizing him and preventing his diaphragm from expanding to take in air. *Id.* at 4-5. Plaintiff screamed that he could not breath, and a defendant responded, "If you're talking, you're breathing." *Id.* at 5. Plaintiff was afraid defendants were going to kill him. *Id.* Defendants stayed on top of plaintiff until he lost consciousness and his heart stopped. *Id.*

McEathern and Jorgenson performed CPR on plaintiff until medical aid arrived. *Id.* at 6. Plaintiff believes that defendants later bragged to coworkers that they had stopped plaintiff's heart. *Id.* When plaintiff awoke in the hospital, he could hardly move and was in severe pain. *Id.* A nurse told him that the defendants had stopped his heart. *Id.* Plaintiff checked out of the hospital and from the lobby he called 911 to report being assaulted by five police officers. *Id.* The police came and arrested plaintiff, claiming that he had assaulted them. *Id.*

Along with his complaint, plaintiff submitted a declaration that recites these facts. Dkt. 6, attach. 2. In a deposition taken for this case, plaintiff reaffirmed his statements in this declaration, stating that it was a fair and accurate representation of what happened, and he would not change or add to the statements in his declaration. Dkt. 19, ex. 1 at 22-33.

Plaintiff's complaint asserts the following claims:

- Defendants violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment when they punched, hit, kneed, and elbowed plaintiff when he was simply seated on the ground.

- Defendants violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment when they shattered plaintiff's teeth and held his mouth closed to keep him from screaming.

REPORT AND RECOMMENDATION - 3

- Defendants were deliberately indifferent to plaintiff's serious need for air when they refused to get off him, even when plaintiff told them repeatedly that he could not breath, violating his Eighth Amendment rights.
- Defendants violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment when they stopped plaintiff's heart.
- Defendants violated plaintiff's due process rights when they used deadly force and stopped plaintiff's heart without a trial or hearing of any kind.
- Defendants violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment when they witnessed the other defendants violating plaintiff's rights and did nothing.
- Defendants violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment when they bragged about stopping plaintiff's heart.

Compl. at 7-8.

## LEGAL STANDARDS

To prevail on a § 1983 claim, the plaintiff must establish that (1) he suffered a violation of a right protected by the Constitution, and (2) the violation was proximately caused by a person acting under color of state law. *Crumpton v. Gates*, 847 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, the plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of production to demonstrate the absence

1  of any genuine issue of material fact. Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). A genuine dispute concerning a material fact is presented when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 253 (1986). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Anderson*, 477 U.S. at 255.

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party is required to present specific facts and cannot rely on conclusory allegations. *Hansen v. U.S.*, 7 F.3d 137, 138 (9th Cir. 1993). A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990) (internal citation and quotation marks omitted). The court must determine whether the specific facts that are presented by the non-moving party, considered along with undisputed context and background facts, would show that a rational or reasonable jury might

return a verdict in the non-moving party's favor based on that evidence. *Emeldi v. University of Oregon*, 698 F.3d 715, 728-29 (9th Cir. 2012).

Under Local Civil Rule 7(b)(2), the nonmoving party's failure to file points and authorities in response to any motion is deemed to constitute consent to the granting of the motion. Nevertheless, a nonmoving party's failure to comply with local rules in opposing a motion for summary judgment does not relieve the moving party of its affirmative duty to demonstrate entitlement to judgment as a matter of law. *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003). The moving party must still meet its affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a matter of law. *Id.* Thus, the absence of an opposition does not change the defendants' burden, and the Court will consider defendants' motion on the merits.

Plaintiff presents his claims under the Eighth Amendment's prohibition on cruel and unusual punishment. However, this prohibition imposes duties on prison officials to provide humane conditions of confinement to inmates detained in a prison setting. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Plaintiff's claims related to the force used during his arrest are not cognizable under the Eighth Amendment. However, he has articulated claims cognizable under the Fourth Amendment's prohibition on the use of excessive force. The Court, liberally construing plaintiff's pro se complaint, will analyze his claims under this prohibition.

A Fourth Amendment claim of excessive force is analyzed under the reasonableness standard set forth by the Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989). The analysis is objective: whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them. *Id*. at 397. In determining the reasonableness of a seizure effected by force, "the nature and quality of the intrusion on the individual's Fourth Amendment

1  interests" should be balanced against "the countervailing governing interests at stake." *Id*. at 396

2  (internal quotations omitted). The reasonableness of a defendant's actions depends on factors

3  such as the severity of the crime at issue, the threat the suspect posed, and whether the suspect is

4  actively resisting arrest. *Id.*

## DEFENDANTS' MOTION

6  Defendants contend plaintiff has failed to identify how each of the defendants personally

7  participated in causing the harm alleged; that plaintiff was physically assaultive and combative to

8  the deputies taking him into custody, rendering their actions reasonable under the Fourth

9  Amendment; that res judicata and collateral estoppel preclude plaintiff from alleging that the

10  deputies assaulted him because he pleaded guilty to third-degree assault against these same

11  deputies; and that qualified immunity protects the deputies from liability for their conduct. Dkt.

12  18.

13  Viewing the evidence in the light most favorable to plaintiff, the Court finds defendants

14  have established the absence of a genuine issue of material fact as to the personal participation of

15  each defendant and as to the reasonableness of the officers' use of force, and plaintiff has not

16  submitted any evidence showing a genuine issue for trial. The Court therefore concludes

17  defendants are entitled to summary judgment in this matter and therefore recommends their

18  motion be granted.

19      1.    ***Defendants' evidence***

20  The evidence submitted by defendants includes excerpts from a deposition of plaintiff

21  taken for this lawsuit. Dkt. 19, ex. 1 ("Plaintiff dep."). In that deposition, plaintiff stated he was

22  charged with, and pleaded guilty to, four counts of third-degree assault related to the events at

23  issue in this case. Plaintiff dep. at 13; *see also* Dkt. 19, ex. 3 (warrant of commitment and

judgment and sentence). The officers whom plaintiff pleaded guilty to assaulting are the same officers he names in this lawsuit and that he alleges used excessive force against him.[1] Plaintiff dep. at 14.

Plaintiff stated that at the time Johnson initiated contact, plaintiff had been at the drive-thru ATM on foot, attempting to transfer money from one card to another and using his phone and a magnifying glass in his attempts, for 20 minutes to an hour, during which time other customers arrived but could not use the ATM. *Id.* at 18-20. He identified defendant Johnson as the first officer to arrive on the scene and the one who initiated contact. *Id.* at 43. When asked which officers did any particular act, plaintiff stated that he did not see them. *Id.* at 43.

Plaintiff stated that in the initial encounter and when Johnson was first attempting to immobilize plaintiff, Johnson did not strike or otherwise physically harm plaintiff. *Id.* at 43. Plaintiff described how Johnson took out his Taser and asked plaintiff if he wanted to be tased. *Id.* at 44-45. Once the other officers arrived, plaintiff could not see who was hitting or striking him. *Id.* at 45. Plaintiff did not know who said, "If you're talking, you're breathing." *Id.* at 45. Plaintiff did not recall anything specific that any of the officers did, other than them all being on top of him. *Id.* at 46.

After these events, plaintiff refused medical treatment at the hospital, stating that he was told that he was not under arrest and he "wanted out." *Id.* at 22-23.

Defendants also submitted a declaration of probable cause related to the criminal charges against plaintiff, in which Patrick Cooper, a deputy prosecuting attorney for Pierce County, related information from the police report. Dkt. 19, ex. 2 ("Cooper decl.") at 1. That declaration

---

[1] Plaintiff stated that he was initially charged with five counts of third-degree assault but the fifth officer, whose name plaintiff did not know, declined to pursue the charges and that count was dropped. Plaintiff dep. at 33.

REPORT AND RECOMMENDATION - 8

states that Johnson reported he was called to the ATM on reports that an individual had been blocking use of the ATM for an extended period of time. *Id.* When Johnson arrived, he saw plaintiff at the ATM with a cell phone and a large magnifying glass in his hands; the machine was emitting a constant beeping sound and plaintiff was rocking back and forth in front of it. *Id.* When Johnson asked him what he was doing, plaintiff replied "What does it look like I'm doing?" *Id.* When asked for identification, plaintiff replied that he didn't have to give the deputy anything. *Id.* He kept taking his hands in and out of his jacket pockets and did not comply when Johnson asked him to stop. *Id.* at 1-2. Johnson told plaintiff he was going to be detained, and as Johnson tried to grab him, plaintiff pulled away, tried to run, and then fell to the ground as Johnson caught up with him. *Id.* at 2. Plaintiff raised his knees in a defensive manner, yelled "Help!", and kicked Johnson several times. *Id.* Johnson called for assistance. *Id.* Plaintiff was "ranting and raving" and not making sense, and not letting anyone come near him and kicking at the officers when they attempted to do so. *Id.* The officers tackled plaintiff and unsuccessfully tried to use a vascular restraint hold on him. *Id.* They used multiple strikes on plaintiff, who appeared to have unusual strength and practically lifted three deputies into the air as they tried to hold him down. *Id.* The officers placed a spit hood on plaintiff when he began spitting at them. *Id.* Plaintiff appeared to lose consciousness when the deputies were trying to hobble his legs, and he had to be revived. *Id.* When the deputies put him under control, they found two knives on the ground, including one locked in an open position, along with several cards, including plaintiff's identification card and a debit card. *Id.* Plaintiff was taken to the hospital where he refused treatment. *Id.*

The declaration further states that Jorgenson reported that plaintiff appeared to lift up three deputies who were on tip of him. *Id.* Jorgenson also reported that plaintiff grabbed and

twisted his fingers and kicked him in the side of the head. *Id.* Deputy Lopez reported that plaintiff continued to thrash and yell throughout the encounter. *Id.* He believed plaintiff showed signs of great strength while talking and rambling without making sense. *Id.* Lopez reported that plaintiff kicked him in the leg. *Id.* McEathron reported that plaintiff was yelling and thrashing about and showing signs of excited delirium. *Id.* McEathron unsuccessfully tried to use a vascular restraint hold. *Id.* He reported that plaintiff was kicking at him throughout the incident. *Id.* And Saechao reported that plaintiff kicked him multiple times in the leg. *Id.*

### 2. *Personal participation*

As noted above, to prevail on a § 1983 claim, a plaintiff must demonstrate how each individually named defendant caused, or personally participated in causing, the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). Conclusory allegations against an official are insufficient to state a § 1983 claim for relief. Rather, the plaintiff must show a causal connection between each defendant's actions and the harm allegedly suffered by plaintiff. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

Defendants have produced evidence demonstrating the absence of any dispute over their personal participation in using excessive force against plaintiff. The excerpts from plaintiff's deposition establish that Johnson did not physically harm plaintiff in the initial moments of the encounter and that Johnson displayed but did not use his taser. The excerpts from the deposition further establish that plaintiff could not identify which officers engaged in any particular use of force that harmed him. Plaintiff has not produced any evidence in response that could support a finding that there is a genuine issue of fact as to how each defendant personally participated in causing him the harm alleged in the complaint. The only specific actions plaintiff identified were actions taken by Johnson, and those did not include actions that harmed him or that he alleges

were excessive use of force under the Fourth Amendment. Plaintiff's conclusory assertions that all the defendants hit or struck him are insufficient to establish a genuine issue of fact as to personal participation.

### 3. *Reasonableness of use of force*

As noted above, the inquiry into the lawfulness of an officer's use of force under the Fourth Amendment is an objective analysis, assessing whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him. *Graham*, 490 U.S. at 397. Factors the court will consider include the severity of the crime at issue, the threat the suspect posed, and whether the suspect is actively resisting arrest. *Id.* at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* A reasonable use of deadly force encompasses a range of conduct, and the availability of a less-intrusive alternative does not render conduct unreasonable. *Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010) (citing *Scott v. Heinrich*, 39 F.3d 912, 915 (9th Cir. 1994). Where an officer has probable cause to believe that a suspect poses an immediate threat to the safety of himself or others, that belief can justify the use of even deadly force. *Id.*

Defendants have produced evidence that establishes the absence of any dispute over whether their use of force was reasonable in light of the facts and circumstances confronting them. The evidence from both plaintiff and Johnson shows that when Johnson attempted to detain plaintiff, plaintiff "pulled away." Compl. at 3; Cooper decl. at 2. The evidence further reflects that plaintiff thrashed, kicked, and spat at the officers as they attempted to detain him. Defendants Johnson, Jorgenson, and McEathron believed plaintiff was exhibiting great strength during the incident, with Johnson and Jorgenson reporting that they saw plaintiff practically lift

three deputies into the air as they tried to hold him down. All defendants reported that plaintiff kicked them, and Jorgenson reported that plaintiff also grabbed and twisted his fingers. Plaintiff later pleaded guilty to assaulting the defendants during this incident. This evidence establishes that plaintiff was actively resisting arrest and that he posed an immediate threat to the officers' safety. The officers' belief that the use of force was necessary to subdue and detain plaintiff was reasonable from the perspective of a reasonable officer on the scene, justifying their use of even deadly force. Plaintiff has not produced any evidence in response that could support a finding that there is a genuine issue of fact as to the reasonableness of the officers' use of force under the circumstances.

In sum, the evidence before the Court, even when taken in the light most favorable to plaintiff, does not demonstrate an issue of fact as to either the personal participation of each defendant in causing the alleged harm, or whether the officers' use of force violated the Fourth Amendment. The only submissions disputing these facts are plaintiff's self-serving allegations. This is insufficient to create an issue of fact for a jury. In the absence of any evidence from plaintiff disputing the evidence submitted by defendants, the Court concludes that the defendants have met their burden and recommends that summary judgment be granted and this case dismissed with prejudice.

The defendants also argue that res judicata and collateral estoppel preclude plaintiff from alleging that they assaulted him, and that they are entitled to qualified immunity. Because the Court has found that plaintiff has not established a genuine issue of fact as to the defendants' personal participation or the reasonableness of their use of force, the Court need not address these issues in detail. However, the Court notes that defendants' res judicata argument implicates the doctrine articulated in *Heck v. Humphrey*, 512 U.S. 477, 489-87 (1994). Under that doctrine,

"if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) (quoting *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996). Consequently, a claim for excessive force by a police officer may be barred where the plaintiff was previously convicted of assaulting that police officer within the same time period as the alleged excessive force. *See Beets v. Cty. of Los Angeles*, 669 F.3d 1038, 1045 (9th Cir. 2012). Plaintiff's allegations and the criminal charges to which he pled guilty are one and the same. The claims he presents are accordingly barred under *Heck*.

Finally, plaintiff has failed to identify the John Doe defendant. Accordingly, the Court recommends that all claims against the John Doe defendant should also be dismissed.

## OBJECTIONS AND APPEAL

The Court recommends that defendants' motion for summary judgment be **GRANTED** and this action be **DISMISSED WITH PREJUDICE.**

Any objections to this recommendation must be filed and served upon all parties no later than **February 8, 2023**. The Clerk should note the matter as ready for the District Judge's consideration on **February 8, 2023**, if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is

due. Objections and responses shall not exceed 12 pages. The failure to timely object may affect the right to appeal.

DATED this 25th day of January, 2023.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14